Finley Harckham, Esq. (FH-8219)
Jeremy J. Flanagan, Esq. (JF-9182)
John G. Nevius, Esq. (JN-0577)
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, NY 10020
(212) 278-1000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HOLD BROTHERS, INC., f/k/a GS HOLD.COM, f/k/a HOLD TRADE.COM; CROSS RIVER MANAGEMENT CORPORATION, f/k/a ON-LINE INVESTMENT SERVICES MANAGEMENT CORPORATION, f/k/a HOLD BROTHERS MANAGEMENT CORPORATION; HOLD SOFTWARE.COM; and HOLD BROTHERS ON-LINE INVESTMENT SERVICES, LLC, f/k/a HOLD BROTHERS ON-LINE INVESTMENT SERVICES, INC., f/k/a ON-LINE INVESTMENT SERVICES, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> HARTFORD CASUALTY INSURANCE COMPANY; and HARTFORD INSURANCE COMPANY OF THE MIDWEST, <br><br> Defendants. | No.: 04cv 7223 (SAS) <br><br> **COMPLAINT** <br><br> JURY TRIAL DEMANDED |

COME NOW the above-named Plaintiffs, Hold Brothers, Inc., Cross River Management Corporation, Holdsoftware.com and Hold Brothers On-Line Investment Services, LLC and their predecessors-in-interest (collectively "Hold Brothers") and for Hold Brothers' Complaint against Defendants, Hartford Casualty Insurance Company

NYDOCS1-741672.3

and Hartford Insurance Company of the Midwest (collectively "Hartford"), state as follows:

## THE NATURE OF THIS ACTION

1.  Hold Brothers brings this action to enforce its rights to insurance coverage under Hartford Business Insurance Policy numbers 13 SBA KY2077 SB, 13 SBA KY2078 SB and 13 SBA KY2079 SB, sold to Hold Brothers by Hartford for the policy period December 31, 2000 through December 31, 2001 (the "Policies," attached as Exs. 1, 2 and 3 to this Complaint).

2.  Hold Brothers is in the securities trading, software development and facilities management business. Hold Brothers' marquee trading office was destroyed completely in the terrorist attacks on the World Trade Center on September 11, 2001 (the "September 11th attacks"). In an attempt to restore its business in the wake of the devastating attacks, Hold Brothers turned to its insurance company, Hartford. Hartford, however, refused to honor its obligations to pay Hold Brothers' losses, or even to advance funds sufficient to rebuild or stabilize Hold Brothers' business operations following the September 11th attacks.

3.  Prior to the September 11th attacks, Hold Brothers had a number of offices throughout the United States, including one in the World Trade Center. Hold Brothers leased the World Trade Center office space in early 2001, started making lease payments in March 2001 and had virtually completed the build out of its World Trade Center office space at the time of the September 11th attacks. Indeed, Hold Brothers had incurred costs of approximately $1 million in constructing improvements at its World Trade Center trading office.

4. After the September 11th attacks, Hold Brothers sought recovery under the Policies for, among other things: physical loss and damage to property; loss of business income; contingent business income and extra expenses associated with the destruction of its World Trade Center trading office and the impact of the September 11th attacks on Hold Brothers' business operations.

5. Hartford purported to conduct an investigation of Hold Brothers' claim. Hold Brothers provided Hartford with surviving relevant documents and other information in Hold Brothers' possession. Hartford, however, delayed its coverage determination and failed to provide Hold Brothers with funds due in a timely manner, preventing Hold Brothers from rebuilding or even stabilizing its business. As a consequence of Hartford's refusal to honor its contractual obligations, Hold Brothers lost significant market share to its competition and has been deprived of the healthy growth it would have experienced had Hartford made full and timely coverage payments.

6. To date, Hartford has offered to pay only a fraction of Hold Brothers' claim. Hartford has breached the Policies by, among other things, refusing to pay for any loss of business income, refusing to pay for all but a small fraction of any property damage, refusing to pay other covered amounts and refusing to pay in a timely manner.

7. Hartford's breaches of the Policies caused Hold Brothers to suffer a number of consequential damages, including, but not limited to:

    (i)    loss of clients;

    (ii)    loss of future business;

    (iii)    lost profits; and

(iv)   increased costs.

8.   Hold Brothers seeks compensatory, direct and consequential damages for Hartford's breaches of the Policies and an award against Hartford of prejudgment interest, postjudgment interest and attorneys' fees and disbursements incurred by Hold Brothers because of Hartford's actions.

## THE PARTIES

9.   Hold Brothers, Inc., is a Delaware corporation with its principal place of business in Jersey City, New Jersey and headquarters at 525 Washington Boulevard.  Hold Brothers, Inc., owns the following entities:

(i)   Cross River Management Corporation, a New Jersey corporation with its principal place of business in New Jersey;

(ii)   Holdsoftware.com, a Delaware corporation with its principal place of business in New Jersey; and

(iii)   Hold Brothers On-Line Investment Services, LLC, incorporated under the laws of Delaware with its principal place of business in New Jersey.

10.   Hartford Casualty Insurance Company is an Indiana corporation with its principal place of business in Connecticut.  Hartford Casualty Insurance Company is licensed to does business in New York, and does business in New York County, New York.

11.   Hartford Insurance Company of the Midwest is an Indiana corporation with its principal place of business in Connecticut.  Hartford Insurance Company of the Midwest is licensed to do business in New York, and does business in New York County, New York.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000 and because the controversy is between citizens of different states.

13. This Court has subject matter jurisdiction under the Air Transportation Safety and System Stabilization Act, Publ. L. No. 107-42, 115 Stat. 2307 (Sept. 22, 2001).

14. Venue is proper in this Court under 28 U.S.C. § 1391(a).

15. Hartford expressly agreed to extend any temporal limitations with respect to Hold Brothers' commencement of litigation regarding these matters during the period when Hartford purportedly was investigating and adjusting Hold Brothers' claim.

## THE POLICIES

16. The Policies provide coverage for, among other things, physical loss or damage to property, the loss of business income caused by a suspension of operations in the wake of physical loss or damage to property, the extra expenses incurred during such a suspension and loss of contingent business income.

17. At the time Hartford sold the Policies to Hold Brothers, the parties understood that physical loss or damage to property owned by Hold Brothers or to the common areas of the World Trade Center could result in a serious disruption of Hold Brothers' operations, resulting in covered lost profits and extra expenses. In recognition of that risk, Hartford sold, and Hold Brothers paid for, business income and extra expense coverage. The parties understood and contemplated that a breach by Hartford

of its obligation to pay business income and/or extra expense losses under the Policies would likely cause Hold Brothers to suffer further loss of income and/or extra expenses.

18. Specifically, the Policies require Hartford to pay Hold Brothers an amount of money equal to the "actual loss of Business Income" suffered by Hold Brothers as a result of the September 11th attacks:

> [Hartford] will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "**period of restoration**". The suspension must be caused by direct physical loss of or damage to property at the described premises....
>
> [Hartford] will only pay for loss of Business Income that occurs within 12 consecutive months after the date of direct physical loss or damage. This Additional Coverage is not subject to the Limits of Insurance.

Hartford Form SS 00 07 07 97 at 5 of 17 (emphasis added).

19. Business Income is defined as "(1) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and (2) Continuing normal operating expenses incurred, including payroll." Hartford Form SS 00 07 07 97 at 5 of 17.

20. The Policies further require Hartford to pay for any "Extra Expense" incurred by Hold Brothers in avoiding or minimizing its loss:

> [Hartford] will pay necessary Extra Expense you incur during the "**period of restoration**" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises, including personal property in the open (or in a vehicle) within 1,000 feet, caused by or resulting from a Covered Cause of Loss.
>
> Extra Expense means expense Incurred:
>
> (1) To avoid or minimize the suspension of business and to continue "operations":

>   (a) At the described premises; or
>
>   (b) At replacement premises or at temporary locations, including:
>
>      (i) Relocation expenses; and
>
>      (ii) Cost to equip and operate the replacement or temporary location.
>
> (2) To minimize the suspension of business if you cannot continue "operations".
>
> (3) (a) To repair or replace any property; or
>
>   (b) To research, replace or restore the lost information on damaged valuable papers and records;
>
> to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or Additional Coverage k., Business Income.
>
> [Hartford] will only pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or damage. This Additional Coverage is not subject to the Limits of Insurance.

Hartford Form SS 00 07 07 97 at 5 and 6 of 17 (emphasis added).

21. As the above provisions detail, a critical factor in calculating Hold Brothers' "Business Income" and "Extra Expense" loss is the determination of the "Period of Restoration."

22. The "Period of Restoration" is defined as the period of time beginning on the date the physical loss damage at the "described premises" occurred and ends on the date when the "described premises" should be "repaired, rebuilt, or replaced":

> "Period of Restoration" means the period of time that:
>
> (a) Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises, and

> (b) Ends on the date when the property the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality.
>
> "Period of Restoration" does not include any increased period required due to enforcement of any law that:
>
> (1) Regulates the construction, use or repair, or required the tearing down of any property; or
>
> (2) Regulates the prevention, control, repair, clean-up or restoration of environmental damage.
>
> The expiration date of this policy will not cut short the "period of restoration".

Hartford Form SS 00 07 07 97 at 16 and 17 of 17 (emphasis added).

23. The World Trade Center cannot be "repaired, rebuilt or replaced" within the 12 month maximum "Period of Restoration" provided by the Policies.

24. Hold Brothers could not, and did not, repair, rebuild or replace its World Trade Center offices within 12 months of September 11, 2001.

25. Hold Brothers is entitled to a "Period of Restoration" for the maximum 12 month period allowed under the Policies.

26. Hold Brothers is entitled additionally to 30 days of "Extended Business Income" coverage under the following provision in the Policies:

> [Hartford] will pay for the actual loss of Business Income you incur during the period that:
>
> (1) Begins on the date property is actually repaired, rebuilt or replaced and "operations" are resumed; and
>
> (2) Ends on the earlier of:
>
> > (a) The date you could restore your "operations" with reasonable speed, to the condition that would have existed if no direct physical loss or damage occurred; or
> >
> > (b) 30 consecutive days after the date determined in (1) above.

> Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

Hartford Form SS 00 07 07 97 at 6 of 17.

## FACTUAL BACKGROUND

### A. Hold Brothers' Covered Loss

27. On September 11, 2001 an airliner was hijacked and purposefully crashed into the World Trade Center causing enormous loss of life and property. As stated in paragraphs 1 and 2 above, Hold Brothers maintained a trading office at the World Trade Center.

28. The terrorist attacks on the World Trade Center destroyed completely Hold Brothers' trading office and everything in it. As a result, Hold Brothers suffered a major property loss, suffered a loss of profits which would have been realized from its World Trade Center operations, incurred extra expenses and suffered other losses. The September 11th attacks also disrupted Hold Brothers' other business operations, including, but not limited to the fact that, at great expense, Hold Brothers was forced to abandon plans to occupy business space at the Harbor Side development in Jersey City, New Jersey. Also, various costs, including, but not limited to, costs for trading, clearing and information services incurred by Hold Brothers were higher after the September 11th attacks than they would have been had the World Trade Center office been in operation.

29. Hold Brothers made a timely demand for coverage under the Policies sold to it by Hartford.

## B.     Hartford's Handling of Hold Brothers' Claim

30.     Shortly after the September 11th attacks, Hold Brothers retained a licensed and nationally renowned insurance adjustment company, National Fire Adjustment Company, Inc. ("NFA"), to prepare and present Hold Brothers' claim for insurance coverage to Hartford.

31.     NFA, as a public adjustment company, assists policyholders, such as Hold Brothers, in presenting claims to insurance companies by reviewing the policyholders' insurance coverage and pertinent business records to determine the scope of the loss suffered by the policyholder. This procedure, in general, is commonly referred to as claim adjustment.

32.     NFA reviewed the Policies and the insurance coverage provided therein, and secured the necessary and surviving business records of Hold Brothers as that information became available.

33.     Hold Brothers submitted its claim for insurance coverage for, among other things, Business Personal Property Loss, Business Income Loss, Contingent Business Income Loss and Extra Expense Loss to Hartford.

34.     Hartford offered to pay Hold Brothers: $150,000 in three payments; $5,000 for property damage; and approximately $73,000 for computers/electronic data processing. Those amounts are far less than the total covered loss suffered by Hold Brothers.

35.     Hold Brothers' business was irreparably harmed by Hartford's negligent and unreasonable handling of Hold Brothers' claim for insurance coverage.

36.  Hold Brothers made reasonable efforts to mitigate its loss by opening a facility at 50 Broad Street in New York City.

37.  Hold Brothers and NFA informed Hartford that Hartford's refusal to make timely payment had placed Hold Brothers in an untenable business position and repeatedly asked Hartford to pay Hold Brothers the amounts due under the Policies which were needed to secure a suitable replacement trading office and to provide sufficient funds to resurrect Hold Brothers' business.

38.  Hartford continued to delay paying Hold Brothers' claim for insurance – including Hartford's continuing refusal to provide any business interruption insurance – by, among other things, requesting information already in Hartford's possession or which Hartford knew, or should have known, did not exist.

39.  Hartford has refused to pay Hold Brothers any money for business interruption.

40.  Despite numerous attempts by Hold Brothers to get Hartford to pay Hold Brothers the amounts due under the Policies, Hartford has refused to pay anything more than a nominal amount.

41.  Hartford's nominal offer to pay a fraction of the insurance monies related to Hold Brothers' loss was too little and came too late to prevent irreparable injury to Hold Brothers.

42.  As a consequence of Hartford's negligent claims handling, Hold Brothers' Period of Restoration extended well beyond the 13-month period provided for under the Policies.

43. Hold Brothers has paid all premiums due under the Policies.

44. Hold Brothers has complied with all conditions in the Policies.

45. Under the terms of the Policies, Hold Brothers is entitled to a 12 month "period of restoration," and an additional 30 days of "Extended Business Income Coverage."

46. Hartford's negligent claims handling is part of a pattern and practice of denying policyholders who suffered losses as a result of the September 11th attacks the full insurance coverage they are owed.

## CAUSE OF ACTION:
## BREACH OF CONTRACT

47. Hold Brothers repeats and realleges paragraphs 1 through 46 as if fully set forth herein.

48. Hartford breached the Policies by inordinately delaying its investigation and payment of Hold Brothers' claim for coverage.

49. Hartford breached the Policies by refusing to pay amounts due to Hold Brothers under the Policies and by baselessly concluding that Hold Brothers was entitled to a nominal amount of insurance coverage.

50. As a result of Hartford's breaches of its obligations under the Policies, Hold Brothers has suffered direct damages.

51. Further, as a result of Hartford's breaches of its obligations under the Policies by refusing to pay monies owed and by conducting an unreasonable investigation and otherwise delaying payments to Hold Brothers, Hold Brothers has

suffered consequential damages in an amount to be proved at trial, but which will include damages for lost business and market share, and increased costs.

52. Accordingly, Hold Brothers is entitled to an award against Hartford of compensatory, direct and consequential damages in the amount established by the evidence, prejudgment and postjudgment interest, attorneys' fees, and such other and further relief as may be just.

**WHEREFORE**, Hold Brothers respectfully requests:

(i) an award against Hartford of compensatory, direct and consequential damages in the amount established by the evidence; and

(ii) prejudgment and postjudgment interest, attorneys' fees, all costs taxed to defendants, and such other and further relief as may be just.

Dated: September 10, 2004

ANDERSON KILL & OLICK, P.C.

*/s/ Finley Harckham*

Finley Harckham (FH-8219)
Jeremy J. Flanagan (JF-9182)
John G. Nevius (JN-0577)
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, NY  10020-1182
(212) 278-1000